**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBYN CASIAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:23-CV-05944-JPB-RDC |
| | ) | |
| vs. | ) | **Oral Hearing Requested** |
| | ) | |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ..........................................................................6

II.    FACTUAL BACKGROUND..........................................................7

III.   THIS COURT SHOULD COMPEL CASIAS'S CLAIMS TO
       ARBITRATION ...........................................................................9

       A.     All of the Evidence Submitted in Support of this Motion Proves the
              Validity and Authenticity of the Agreement. ......................................10

              1.     AT&T Offered the Agreement to Casias via Email. ...............11

              2.     Casias Accepted that Agreement by Failing to Opt-Out as
                     Instructed..................................................................12

              3.     A Mutual Promise to Arbitrate is Sufficient Consideration for
                     the Agreement. ..........................................................16

       B.     Casias's Claims are within the Scope of the Agreement. ..................16

       C.     This Court Should Stay this Action Pending Arbitration. .................17

IV.    CONCLUSION.............................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABCO Builders, Inc. v. Progressive Plumbing, Inc.*,
  282 Ga. 308 (2007) ....................................................................................9

*AT&T Mobility Servs. LLC v. Inzerillo*,
  2018 U.S. Dist. LEXIS 231537 (W.D. Mo. Jan. 31, 2018) ................................15

*Bazemore v. Jefferson Capital Sys., LLC*,
  827 F.3d 1325 (11th Cir. 2016) ........................................................................16

*Bolden v. AT&T Servs., Inc.*,
  350 F. Supp. 3d 1029 (D. Kan. 2018) ................................................................15

*Caley v. Gulfstream Aerospace Corp.*,
  333 F. Supp. 2d 1367 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th
  Cir. 2005) ...................................................................................................11, 16

*Chem. Bank v. First Tr. of N.Y., Nat'l Ass'n (In re Se. Banking Corp.)*,
  156 F.3d 1114 (11th Cir. 1998) ........................................................................11

*Compere v. Nusret Miami, Ltd. Liab. Co.*,
  396 F. Supp. 3d 1194 (S.D. Fla. 2019) .............................................................10

*Cornoyer v. AT&T Mobility Servs., LLC*,
  2016 U.S. Dist. LEXIS 140109 (D.N.M. Oct. 5, 2016) ....................................15

*Couch v. AT&T Servs., Inc.*,
  2014 U.S. Dist. LEXIS 178889 (E.D.N.Y. Dec. 31, 2014) ...............................15

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .........................................................................................9

*Franklin Credit Mgmt. Corp. v. Friedenberg*,
  275 Ga. App. 236 (2005) ..................................................................................17

*Functional Prods. Trading, S.A. v. I-Grain, LLC*,
  2012 U.S. Dist. LEXIS 199065 (N.D. Ga. Mar. 19, 2012) ...............................11

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

**Page(s)**

*Gallivan v. Educ. Mgmt. Corp.*,
  2017 U.S. Dist. LEXIS 218378 (N.D. Ga. Aug. 16, 2017) ................................10

*Griggs v. Kenworth of Montgomery, Inc.*,
  775 F. App'x 608 (11th Cir. 2019) ....................................................................11

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) ............................................................................13

*Howard v. Dollar Gen.*,
  2019 U.S. Dist. LEXIS 249525 (N.D. Ga. June 3, 2019)............................13, 15

*Hubbard v. Yancey Bros. Co.*,
  2024 U.S. Dist. LEXIS 10081 (N.D. Ga. Jan. 19, 2024)...................................16

*Johnson v. Macy's South, LLC*,
  2007 U.S. Dist. LEXIS 72519 (N.D. Ga. Sep. 27, 2007)...................................15

*Klay v. Pacificare Health Sys., Inc.*,
  389 F.3d 1191 (11th Cir. 2004) .........................................................................17

*McBride v. Gamestop, Inc.*,
  2011 U.S. Dist. LEXIS 12615 (N.D. Ga. Feb. 8, 2011)..............................11, 12

*Nguyen v. Federated Dep't Stores, Inc.*,
  2005 U.S. Dist. LEXIS 39642 (N.D. Ga. July 12, 2005) ............................13, 14

*Order Homes, LLC v. Iverson*,
  300 Ga. App. 332 (2009) .....................................................................................9

*Pargar, LLC v. CP Summit Retail, LLC*,
  316 Ga. App. 668 (2012) ...................................................................................12

*Powe v. AT&T Mobility*,
  2016 U.S. Dist. LEXIS 197699 (E.D. Ky. Mar. 25, 2016) ...............................15

*Ruiz v. Margolin*,
  2023 U.S. Dist. LEXIS 47654 (S.D. Ga. Mar. 21, 2023)..................................10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Russell v. Five Star Quality Care, LLC*,
    2023 U.S. Dist. LEXIS 91393 (N.D. Ga. May 25, 2023).....................................9

*Versmesse v. AT&T Mobility LLC*,
    2014 U.S. Dist. LEXIS 27816 (N.D. Ind. Mar. 4, 2014)...................................15

*Walker v. Vxi Glob. Sols. LLC*,
    2021 U.S. Dist. LEXIS 116241 (N.D. Ga. Mar. 1, 2021) ..................................10

*Wright v. Circuit City Stores, Inc.*,
    82 F. Supp. 2d 1279 (N.D. Ala. 2000)................................................................14

*Yarnall v. Martin-Brower Co., LLC*,
    2023 U.S. Dist. LEXIS 183786 (N.D. Ga. Oct. 12, 2023) .................................17

**Statutes**

9 U.S.C.
    § 2.........................................................................................................................9
    § 3..................................................................................................................9, 17
    § 4....................................................................................................................6, 9

Civil Rights Act of 1964 ("Title VII")...............................................................8, 17

Ga. Code
    § 9-9-6(a) ............................................................................................................9
    § 10-12-15.........................................................................................................14

Defendant AT&T Services, Inc. ("Defendant," "AT&T," or the "Company"), by counsel and pursuant to 9 U.S.C. § 4 and Civil Local Rule 7.1, hereby moves this Court for an Order: (1) enforcing Plaintiff Robyn Casias's pre-dispute arbitration agreement with the Company; and (2) granting a stay of proceedings.  Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and Civil Local Rule 7.1(E), AT&T requests an oral hearing on this motion, which is estimated to require 30 minutes.  Pursuant to Civil Local Rule 7.1(A)(1), the basis for this motion and the memorandum of legal authority in support of this motion follow in the Memorandum of Law immediately below.[1]

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

Defendant hereby submits this Memorandum of Law in support of its Motion to Compel Arbitration and Stay Proceedings.

## I.   INTRODUCTION

Plaintiff Robyn Casias has sued AT&T in derogation of her contractual promise to arbitrate.  AT&T respectfully requests that this Court compel Casias's claims to arbitration and stay this action pending completion of that proceeding.

---

[1] This Motion is supported by the Declarations of Brandy Giordano, Lead HR Specialist/Generality at AT&T; Cindy McIntosh, Expert Enterprise Architecture at AT&T; Michael Albert, Principal System Engineer at AT&T; and Sara Tomeszko, Partner at Paul Hastings LLP, filed simultaneously herewith.

## II.   <u>FACTUAL BACKGROUND</u>

Casias worked for AT&T from December 2001 to July 2020.  (ECF No. 6, ¶¶ 12, 66.)  AT&T required Casias, as its employee, to monitor her work email and respond appropriately.  (Declaration of Cindy McIntosh ("McIntosh Decl."), ¶ 7.)

On December 1, 2011, AT&T sent a "Notice Regarding Arbitration Agreement" to Casias's work email.  (Declaration of Brandy Giordano ("Giordano Decl.") ¶ 11, Ex. 1; ¶ 17, Ex. 3; McIntosh Decl., ¶ 6.)[2]  That email explained the Company had created an arbitration process for resolving disputes between it and its employees, as an alternative to courts and juries.  (Giordano Decl., ¶ 11, Ex. 1.) It told Casias that it was important she review the linked Management Arbitration Agreement ("MAA" or "Agreement").  (*Id.*)  It gave her until February 6, 2012, to opt-out *if she did not want to participate* in the arbitration process.  (*Id.*)  And it instructed her how to opt-out.  (*Id.*)  Casias simply needed to click the link at the bottom of the email to open the MAA, enter her username and confidential password, and then click a link on the first page of the Agreement to electronically register her opt-out decision.  (*Id.*, ¶¶ 11–13, Exs. 1–2.)

---

[2] Casias did not "communicate her gender transition" to AT&T until June 2017.  (ECF No. 6, ¶¶ 26–27.)  In December 2011, Casias thus still "present[ed] as a male named 'Robert Lott.'"  (ECF No. 6, ¶ 2.)  As a result, the searches Giordano discusses performing in her declaration are associated with the name "Robert Lott," rather than Robyn Casias.

Importantly, the email made clear that if she did not opt-out, she was agreeing to arbitrate any claims instead of proceeding in court.  (*Id.*, ¶ 11, Ex. 1.)  AT&T subsequently sent that same email to Casias two more times—once on December 15, 2011, and again on January 16, 2012.[3]  (*Id.*, ¶ 17, Ex. 3.)  AT&T retained the records for employees who opted-out.  (*Id.*, ¶¶ 21–23.)  Thousands elected to do so.  (*Id.*, ¶ 22.)  Casias did not.  (*Id.*, ¶ 23.)  She subsequently worked at AT&T for almost nine more years.

On December 22, 2023, Casias filed a Complaint against AT&T Services Inc., which she subsequently amended on January 22, 2024.  (ECF Nos. 1, 6.)  Her operative complaint alleges discrimination and retaliation in violation of Title VII.  (ECF No. 6, ¶¶ 70–82.)  But, pursuant to the MAA's terms, Casias agreed to submit these claims to "final and binding arbitration instead of court litigation."  (Giordano Decl., ¶ 13, Ex. 2.)  On January 10, 2024, AT&T's counsel thus sent Casias's counsel a letter informing them of the MAA; including a copy of the Agreement and citations to cases in which courts have compelled arbitration based on similar facts.  (Declaration of Sara B. Tomezsko ("Tomezsko Decl."), ¶ 4, Ex. A.)  The parties continued to meet-and-confer, but Casias ultimately refused to stipulate to arbitration, necessitating this motion.  (*Id.*, ¶¶ 5–6.)

---

[3] AT&T did not receive any notices that these emails were undeliverable, meaning they were properly delivered.  (Giordano Decl., ¶¶ 18–20.)

## III.  THIS COURT SHOULD COMPEL CASIAS'S CLAIMS TO ARBITRATION

AT&T and Casias mutually agreed to arbitrate any claims against the other, and their Agreement is enforceable under the FAA.[4]  As Casias sued in the wrong forum, this Court must now "direct[] the parties to proceed to arbitration in accordance with the terms of the" Agreement and stay all proceedings pending completion of arbitration.  9 U.S.C. §§ 3–4.  "[T]he Act leaves no place for the exercise of discretion."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).[5]

---

[4] The Agreement, by its terms, is "governed by the Federal Arbitration Act" and "evidences a transaction involving commerce."  (Giordano Decl., ¶ 13, Ex. 2.)  This, alone, is sufficient to satisfy "the FAA's broad interstate commerce requirement."  *Russell v. Five Star Quality Care, LLC*, 2023 U.S. Dist. LEXIS 91393, at *6 (N.D. Ga. May 25, 2023).  Of course, the FAA would apply even without such a stipulation.  Casias's job as "a Senior – Technical Architect involved working with business clients to create architectural requirements to support AT&T's wireless services for customers who made interstate, intrastate, and international calls."  (McIntosh Decl., ¶ 5.)  Her employment thus affected interstate commerce, rendering the Agreement enforceable through the FAA.  9 U.S.C. § 2.

[5] Though AT&T seeks to enforce the Agreement under the FAA, these directives also exist under Georgia law.  *See Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 334–35 (2009) ("In enacting the [Georgia Arbitration Code], the General Assembly established a clear public policy in favor of arbitration.") (quotation omitted); Ga. Code § 9-9-6(a) ("If the application [to compel arbitration] is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.").  Indeed, the Georgia "arbitration code closely tracks federal arbitration law."  *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (2007).

**A.     All of the Evidence Submitted in Support of this Motion Proves the Validity and Authenticity of the Agreement.**

As "the party seeking to compel arbitration," AT&T bears the "initial burden of producing the [a]rbitration [a]greement and establishing the contractual relationship necessary to implicate the FAA." *Compere v. Nusret Miami, Ltd. Liab. Co.*, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (quotation omitted); *see also Ruiz v. Margolin*, 2023 U.S. Dist. LEXIS 47654, at *5 (S.D. Ga. Mar. 21, 2023) (accord.).  A preponderance of the evidence standard applies.  *Gallivan v. Educ. Mgmt. Corp.*, 2017 U.S. Dist. LEXIS 218378, at *19 (N.D. Ga. Aug. 16, 2017). AT&T has thus submitted three declarations that establish the existence of an enforceable contract into which AT&T and Casias entered:  Brandy Giordano (AT&T's Lead HR Specialist/Generalist), Cindy McIntosh (AT&T's Expert Enterprise Architecture) and Michael Albert (AT&T's Principal System Engineer). In addressing a motion to compel, a court may accept evidence by properly drawn declarations showing that the parties entered into a binding contract with a valid arbitration clause.  *See Walker v. Vxi Glob. Sols. LLC*, 2021 U.S. Dist. LEXIS 116241, at *7 (N.D. Ga. Mar. 1, 2021) (J. Cannon) (a party moving to compel arbitration can support their motion with various pieces of evidence, including "'affidavits or declarations'") (citation omitted).[6]

---

[6] Report and recommendation adopted in 2021 U.S. Dist. LEXIS 114738 (N.D. Ga. June 21, 2021).

Once AT&T satisfies the initial burden as the moving party, it falls to Casias as "the party resisting arbitration" to "prov[e] that the claims at issue are unsuitable for arbitration." *Griggs v. Kenworth of Montgomery, Inc.*, 775 F. App'x 608, 612 (11th Cir. 2019) (*citing Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Courts turn to state law—in this case, Georgia—"[t]o determine whether a valid arbitration agreement exists." *Functional Prods. Trading, S.A. v. I-Grain, LLC*, 2012 U.S. Dist. LEXIS 199065, at *27 (N.D. Ga. Mar. 19, 2012); *see also Chem. Bank v. First Tr. of N.Y., Nat'l Ass'n (In re Se. Banking Corp.)*, 156 F.3d 1114, 1121 n.9 (11th Cir. 1998) ("[A]lthough federal law establishes the enforceability of arbitration agreements, a court must construe that agreement according to generally applicable principles of state law."). It thus falls to AT&T to show a "'definite offer and complete acceptance, for consideration.'" *McBride v. Gamestop, Inc.*, 2011 U.S. Dist. LEXIS 12615, at *6 (N.D. Ga. Feb. 8, 2011) (*quoting Moreno v. Strickland*, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)). AT&T can easily show all three.

### 1.   AT&T Offered the Agreement to Casias via Email.

In Georgia, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that [her] assent to that bargain is invited and will conclude it." *Caley v. Gulfstream Aerospace Corp.*,

333 F. Supp. 2d 1367, 1373 (N.D. Ga. 2004) (quotation omitted) , *aff'd*, 428 F.3d 1359 (11th Cir. 2005).  And AT&T made such an offer when it sent Casias a copy of the Agreement via email three times—on December 1, 2011; again on December 15, 2011; and once more on January 16, 2012.  (Giordano Decl., ¶ 17, Ex. 3.)

Each email laid out the material provisions of the Agreement—that is, the mutual promises to arbitrate, the nature of the claims subject to arbitration, and the exclusive nature of the arbitration remedy—and specified a method and deadline for acceptance.  (*Id.*, ¶ 11, Ex. 1.)  They also referenced, and linked, to the full text of the Agreement.  (*Id.*)  It is thus "clear that an offer was made to the Plaintiff[] regarding the Arbitration Agreement."  *McBride*, 2011 U.S. Dist. LEXIS 12615 at *7.  As the emails clearly explained, Casias could accept AT&T's offer by doing nothing and continuing to work at AT&T, or she could reject it by opting-out.  She chose the first option, as noted below.

2.   <u>Casias Accepted that Agreement by Failing to Opt-Out as Instructed.</u>

"Georgia courts have adopted an objective theory of intent for determining whether there has been acceptance of the terms of a proposed contract;" examining "intent of the parties as objectively manifested in what they have communicated to one another."  *Pargar, LLC v. CP Summit Retail, LLC*, 316 Ga. App. 668, 673 (2012).  As such, "[s]ilence or inaction can constitute acceptance of an arbitration

agreement and may, therefore, form a binding contract to arbitrate . . . 'where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound.'" *Nguyen v. Federated Dep't Stores, Inc.*, 2005 U.S. Dist. LEXIS 39642, at *11–12 (N.D. Ga. July 12, 2005) (*quoting Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002)).[7]

Such circumstances exist where (as here) a Company makes its employee "aware that her continued employment, without opting out, constitutes acceptance of the agreement." *Howard v. Dollar Gen.*, 2019 U.S. Dist. LEXIS 249525, at *4 (N.D. Ga. June 3, 2019).  After all, "employment includes the understanding that employees will act with diligence in following an employer's instructions and responding to requests, whether transmitted by email or another reasonable mode of communication." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 714 (7th Cir. 2019).  It is thus reasonable for an employer to construe a worker's "silence as acceptance of the arbitration agreement after [she] was given a clear offer, a reasonable opportunity to opt-out, and repeated instructions that silence and continued employment reflected acceptance" via email.  *Id.*

Again, AT&T sent three messages to Casias's work email address, each of which informed her about the Agreement and her need to opt-out if she wished not

---

[7] Report and recommendation adopted in 2006 U.S. Dist. LEXIS 2878, at *2 (N.D. Ga. Jan. 19, 2006).

to accept its terms.[8]  Georgia law presumes Casias received each email the minute it "enter[ed] an information processing system that" she used "for receiving electronic records or information of the type sent and from which" she was "able to retrieve the electronic record"—*i.e.* her Company inbox—"in a form capable of being processed by that system."  Ga. Code § 10-12-15(b).  This presumption is bolstered by the fact AT&T did not receive any automatic messages in response stating that the email sent to Casias was undeliverable.

Casias thus had notice of the terms of AT&T's offer and the consequences of remaining silent if she did not intend to accept that offer. Unlike thousands of her colleagues, Casias chose not to opt-out by the deadline and then continued working at AT&T.  As multiple courts within the Eleventh Circuit have found, that constitutes acceptance.  *See, e.g.*, *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1285 (N.D. Ala. 2000) ("By choosing not to timely mail in the opt-out form which" their employer "provided them, the Plaintiffs voluntarily agreed to arbitrate any employment-related claims that they might have"); *Nguyen*, 2005 U.S. Dist. LEXIS 39642, at *10–11 ("Acceptance of the offer" to arbitrate "was made by

---

[8] Under Georgia law, "an electronic record is sent" when it is (1) "addressed properly . . . to an information processing system that the recipient . . . uses for receiving electronic records or information of the type sent and from which the recipient is able to retrieve the electronic record;" (2) "is in a form capable of being processed by that system;" and (3) "enters" a system "outside the control" of the "person that sent the electronic record on behalf of the sender."  Ga. Code § 10-12-15(a).

failure to return the" form opting-out of the program); *Johnson v. Macy's South, LLC*, 2007 U.S. Dist. LEXIS 72519, at \*11 (N.D. Ga. Sep. 27, 2007) (finding an employee "enter[ed] into a valid, written agreement to arbitrate" by failing to opt-out as instructed); *Howard*, 2019 U.S. Dist. LEXIS 249525, at \*4 (holding an employee's "continued employment, without opting out, constitutes acceptance of the agreement" she received).[9]

---

[9] Courts around the country have also explicitly found that AT&T's e-mail notice and opt-out procedure creates an enforceable arbitration agreement between it and its employees. *See, e.g.*, *Bolden v. AT&T Servs., Inc.*, 350 F. Supp. 3d 1029, 1036 (D. Kan. 2018) (concluding "that plaintiff, an employee of AT&T, had sufficient notice of the arbitration program and a reasonable opportunity to opt out of the program such that AT&T could reasonably construe her silence as an agreement to arbitrate her disputes"); *Versmesse v. AT&T Mobility LLC*, 2014 U.S. Dist. LEXIS 27816, at \*17 (N.D. Ind. Mar. 4, 2014) ("Plaintiff did not opt out of the agreement by the deadline . . . and therefore assented to the terms of the agreement" to arbitrate); *Couch v. AT&T Servs., Inc.*, 2014 U.S. Dist. LEXIS 178889, at \*14 (E.D.N.Y. Dec. 31, 2014) (enforcing an arbitration agreement where AT&T produced "evidence that three emails were sent to Couch notifying him about the Agreement and indicating that he needed to opt out of the program if he did not wish to be bound by the Agreement"); *Powe v. AT&T Mobility*, 2016 U.S. Dist. LEXIS 197699, at \*7-8, \*9-10 (E.D. Ky. Mar. 25, 2016) (enforcing an arbitration agreement a plaintiff denied receiving via e-mail where it was "undisputed that [the plaintiff] did not opt out of the agreement and continued to work for [the defendant] after the arbitration agreement came into effect"); *Cornoyer v. AT&T Mobility Servs., LLC*, 2016 U.S. Dist. LEXIS 140109, at \*37 (D.N.M. Oct. 5, 2016) ("[W]hen, in accordance with the agreement's terms, [the plaintiff] did not take action to opt out of the Management Arbitration Agreement . . . he manifested his acceptance"); *AT&T Mobility Servs. LLC v. Inzerillo*, 2018 U.S. Dist. LEXIS 231537, at \*5–7 (W.D. Mo. Jan. 31, 2018) (holding the plaintiff's "failure to opt out of the arbitration program and his continued employment at AT&T is sufficient to show that he accepted the terms of the arbitration agreement").

3.   <u>A Mutual Promise to Arbitrate is Sufficient Consideration for the Agreement.</u>

"Georgia law provides that mutual promises and obligations are sufficient consideration to support a contract." *Caley*, 428 F.3d at 1376.  And, here, Casias "received reciprocal promises from [AT&T] to arbitrate and be bound by arbitration in covered claims"; which, as a matter of law, "constitute bargained-for consideration." *Id.*; *see also* Giordano Decl., ¶ 13, Ex. 2 ("This agreement applies to any claim that you may have against" AT&T, as well as to "any claim that the Company . . . may have against you").  So, too, does AT&T's "continued employment" of Casias.  *Hubbard v. Yancey Bros. Co.*, 2024 U.S. Dist. LEXIS 10081, at *7 (N.D. Ga. Jan. 19, 2024) (finding both mutuality and "Plaintiff's continued employment constituted valid consideration").  Sufficient consideration exists and the Agreement is therefore enforceable.

**B.   Casias's Claims are within the Scope of the Agreement.**

The Eleventh Circuit has long recognized "that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quotation omitted).  And the Agreement covers, with no exemption, all claims "arising out of or related to [Casias's] employment or termination of employment with the Company and any other disputes regarding the employment relationship."  (Giordano Decl., ¶ 13, Ex.

16

2.)  This includes claims under the "Civil Rights Act of 1964," *i.e.*, Title VII—the sole counts pled in Casias's Complaint.[10]  (*Id.*; ECF No. 6.)

There is thus no doubt that Casias's action falls within the scope of the Agreement.  Nor is there any doubt that her claims are arbitrable.  *See Yarnall v. Martin-Brower Co., LLC*, 2023 U.S. Dist. LEXIS 183786, at *3 (N.D. Ga. Oct. 12, 2023) ("[C]laims that arise under laws prohibiting discrimination in employment, such as Title VII," are "generally arbitrable").  As such, Casias must pursue this action in arbitration, as she agreed to do.

### C.    This Court Should Stay this Action Pending Arbitration.

The FAA mandates that a district court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *see also Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory."). As

---

[10] Casias also pleads a third count for punitive damages and expenses of litigation.  (ECF No. 6, ¶¶ 83–85.)  However, those damages flow from the alleged Title VII violations underlying Casias's Complaint.  And "[t]he law does not support the concept that pursuing each type of damages flowing from a specific tort is a separate and independent cause of action." *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (2005).  Regardless, the Agreement also encompasses that relief as, under it, "Arbitrators can award the same damages and relief that a court can award."  (Giordano Decl., ¶ 13, Ex. 2.)

Casias's claims are arbitrable, this Court should stay this case until her claim has been arbitrated.

## IV.   <u>CONCLUSION</u>

AT&T and Casias are bound by a valid arbitration agreement.  Casias's consent to the Agreement is clear—from both her choice not to opt-out and her continued employment.  And her entire action falls within the scope of the Agreement.  For the foregoing reasons, AT&T requests that this Court Order Casias to submit her claims to arbitration pursuant to the Agreement and stay this proceeding pending its completion.

Respectfully submitted,

*/s/ Brian M. Harris*
Brian M. Harris (Bar No. 331579)
bharris@bakerlaw.com
Ashley Guffey (Bar No. 237956)
aguffey@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street NW
Suite 2400
Atlanta, GA 30309
Phone: (404) 946-9828
Fax: (404) 459-5734

Sara B. Tomezsko (*Pro Hac Vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY  10166
Phone: (212) 318-6000
Fax: (212) 319-4090
saratomezsko@paulhastings.com

*Attorneys for Defendant*
AT&T Services, Inc.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1.C.**

I hereby certify, pursuant to LR 5.1 of the Northern District of Georgia, that the foregoing Motion to Compel Arbitration and Stay All Proceedings and accompanying Memorandum of Law complies with the font and point selections approved by the Court in LR 5.1.C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Brian M. Harris*
Brian M. Harris

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ROBYN CASIAS, | ) |
| | ) |
| Plaintiff, | )   Civil No. 1:23-CV-05944-JPB-RDC |
| | ) |
| vs. | ) |
| | ) |
| AT&T SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing Motion to Compel Arbitration and Stay All Proceedings and all accompanying Exhibits with the Clerk of the Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all attorneys of record:

**L F BARNES LAW LLC**
L'Erin Wiggins (Bar No. 141797)
P.O. Box 250464
Atlanta, Georgia 30325
Tel: (404) 680-6498
Fax: (404) 393-5763
Email: lerin@lfbarneslaw.com

**GODDARD LAW PLLC**
Megan S. Goddard (*Pro Hac Vice*)
39 Broadway, Suite 1540
New York, NY 10006
Telephone: (646) 964-1178
Facsimile: (212) 208-2914
Email: Megan@goddardlawnyc.com

*/s/ Brian M. Harris*
Brian M. Harris

22