IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBYN CASIAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: ) 1:23-CV-05944-JPB-RDC |
| AT&T SERVICES, INC., | ) ) ) |
| Defendant. | ) ) |

**DECLARATION OF ROBYN CASIAS IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

COMES NOW, ROBYN CASIAS, and pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a citizen of the United States, over the age of 18, and competent to testify as to the matters contained in this Declaration.

2. I am the Plaintiff in this case and thus have personal knowledge of the facts set forth in this Declaration.

3. I was employed by Defendant AT&T Services Inc. ("AT&T") from in or about December 2001 until July 24, 2020. In the course of my employment at AT&T, all employment documents were provided to me via AT&T's Employee Dashboard, an online portal wherein I and other AT&T employees could receive, review, and take any necessary actions regarding those documents. While I do not

1

recall exactly when the Employee Dashboard was implemented, I know that it was in place at least since 2007, the time of AT&T's acquisition of Bell South.

4. To the extent an email was sent to me regarding any kind of training, compliance, or legal documentation, it would refer to documents which were then available via the Employee Dashboard.

5. At no time during my employment with AT&T did I ever receive any employment-related documents only via email. It was my reasonable expectation throughout my employment at AT&T that any important employment-related documents, especially legal documents, would be communicated by email and any action to be completed such as opting-in, opting-out, or acknowledging receipt of Employment compliance policies would be accomplished on my Employee Dashboard portal.

6. Indeed, per AT&T's own policy regarding "phishing,"[1] I was expected to be highly skeptical of links received via email, especially those which appeared to originate outside of AT&T. As a part of AT&T's training, I was instructed to flag emails that appeared to be illegitimate attempts to access my information and to check the Employee Dashboard for legitimate compliance tasks.

7. Even if I had received an email regarding the alleged arbitration

---

[1] Phishing is the fraudulent practice of sending emails or other messages purporting to be from reputable companies in order to induce individuals to reveal personal information.

2

agreement, it is likely that I would have dismissed it as phishing and, per AT&T's own policy, flagged it as junk.

8.  In reviewing the alleged email containing said arbitration agreement, attached as Exhibit 1 to the Declaration of Brandy Giordano, I can see that there are several "red flags" that would reasonably lead any person familiar with AT&T's policy to dismiss the email as phishing. For example, the email contains the line "If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement." This type of language is common to phishing schemes and, as such, I and any other AT&T employee who had received training on phishing schemes would have been on alert that the email was not legitimate. It was considered best practices to bypass any hyperlinks in an email and, instead, to directly access the Employee Dashboard to validate if the task referenced in email was a valid task pending completion by the communicated due date.

9.  To my knowledge, during my nearly twenty-year employment there, no legal policies were distributed only via email with a hyperlink. In the ordinary course of business, similar agreements required confirmation of receipt via the Employee Dashboard and were visible there.

10. Furthermore, if the email was distributed using a third-party software, as set forth in the Giordano Declaration, it may have appeared to have originated outside of AT&T, yet another red flag for phishing.

3

11. I have no recollection of ever receiving an email from AT&T or any other source concerning an arbitration agreement and have no reason to believe that this alleged email ever reached my inbox. However, if it did, I believe I would have flagged it as junk.

12. I have never reviewed the alleged arbitration agreement before the commencement of the instant litigation nor, to my knowledge, have I ever had the opportunity to.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE FALSE, I AM SUBJECT TO PUNISHMENT.**

Executed this 28th day of March at Morrison, Jefferson County, Colorado.

DocuSigned by:
*Robyn Casias*
000A1B03E07549C...
ROBYN CASIAS