IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBYN CASIAS,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES, INC.,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:23-cv-05944-JPB-RDC |

## **NON-FINAL REPORT AND RECOMMENDATION**

Defendant AT&T Services, Inc. has moved to compel arbitration and stay this employment-discrimination case brought by Plaintiff Robyn Casias, its former employee. (Doc. 12). For the reasons below, the undersigned **RECOMMENDS** that the motion be **GRANTED** and the parties be **ORDERED** to arbitrate their dispute. The undersigned further **RECOMMENDS** that this case be **STAYED** and **ADMINISTRATIVELY CLOSED** pending the outcome of arbitration.

### I.     BACKGROUND

Plaintiff started working for AT&T in 2001 as a Senior Member of Technical Staff. (Doc. 6 ¶ 12). She was eventually promoted to Senior Solution Architect in 2006 and Principal Solution Architect in 2012. (*Id.*). When Plaintiff first began her tenure with AT&T, she presented as male and her name was "Robert Lott." (*Id*

¶ 13). In June 2017, Plaintiff began communicating her gender transition to other AT&T employees, and she formally announced her transition via email in August 2017. (*Id.* ¶¶ 26–31, 34). Plaintiff alleges that, once she announced her transition, AT&T stopped assigning her new project-related work, began assigning her more administrative work, excluded her from meetings and calls, and prevented her from obtaining a position with an AT&T subsidiary. (*Id.* ¶ 36–65). AT&T eventually terminated Plaintiff in July 2020, stating that she was "on the surplus." (*Id.* ¶ 66). Plaintiff alleges that AT&T's conduct constituted gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. (*Id.* ¶¶ 70–82).

As to the matter at hand, AT&T argues that Plaintiff agreed to binding arbitration and that this Court should compel her claims to arbitration. (Doc. 12). It has presented evidence that shows the following.

On December 1, 2011, AT&T sent a "Notice Regarding Arbitration Agreement" to Plaintiff's work email. (Doc. 12-1 ["McIntosh Decl."] ¶ 6; Doc. 12-2 ["Giordano Decl."] ¶¶ 5–6, 11, 17, Exs. 1 & 3). According to her direct supervisor at that time, Plaintiff's position with AT&T required her to monitor work emails as many work-related communications with information pertinent to her job were sent via email. (McIntosh Decl. ¶ 7).

AT&T sent the communication using a software program called "Promenta," which allows a user to send an email to a large group of recipients. (Giordano Decl.

¶ 9). The email stated the following:

> **Action Required: Notice Regarding Arbitration Agreement**
>
> AT&T has created an alternative process for resolving disputes between the company and employees. Under the process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court, and may be faster.
>
> The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email**. It provides important information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Monday, Feb. 6, 2012 to opt out -- that is, decline to participate in the arbitration process -- using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.
>
> **Instructions for "Opting Out" of the Agreement:**
>
> **To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out.**
>
> Remember, the decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement. If, contrary to this assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).

> If you have any questions about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").
>
> **Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration.**

(*Id.*, Ex. 1) (formatting in original). The email ended with a hyperlink to the Management Arbitration Agreement ("MAA"). (*Id.*, Exs. 1 & 2).

AT&T sent this email to Plaintiff two more times—on December 15, 2011 and January 16, 2012. (*Id.* ¶ 17, Ex. 3). AT&T also published the full text of the MAA to its corporate intranet page, which was accessible to all employees who received the notification email. (*Id.* ¶ 13).

AT&T retained records for employees who opted out, and Plaintiff did not opt out. (*Id.* ¶ 21–23). Plaintiff continued to work for AT&T until her termination in July 2020.

Defendant moves to arbitrate Plaintiff's claims rather than litigate in court. (Doc. 12). It argues that Plaintiff agreed to submit her claims to final and binding arbitration by failing to opt out of the MAA. (*See* Giordano Decl. ¶ 13, Ex. 2).

Plaintiff disagrees, arguing that Defendant has failed to prove that a valid arbitration agreement ever existed between the parties. (Doc. 17). Plaintiff asserts that, even if she had received the emails in question, she would have ignored them and flagged them as spam. (Doc. 17-1 ["Pl. Decl."] ¶ 7).

Briefing is complete, and the motion is ripe for review.

4

## II.     LEGAL STANDARD

The validity of arbitration agreements is generally governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, which was designed "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *accord Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). With "the promise of quicker, more informal, and often cheaper resolutions for everyone involved" as catalyst, the FAA embodies "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (citation omitted).

A reviewing court treats a motion to compel arbitration similarly to a motion for summary judgment. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Under that posture, the court follows a two-step inquiry. *Klay v. PacifiCare Health Sys., Inc.*, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the court must "determine whether the parties agreed to arbitrate the dispute." *Id.* If so, the court then determines "whether legal constraints external to the parties' agreement foreclosed arbitration." *Id.* (citation omitted); *see also* 9 U.S.C. §§ 2–4.

The threshold question whether an arbitration agreement exists "is simply a matter of contract between the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Accordingly, when determining whether an arbitration

agreement exists, courts generally "should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. Under Georgia law—which the parties agree applies here—the party seeking to compel arbitration has the burden to demonstrate that a valid agreement to arbitrate exists. *Bazemore*, 827 F.3d at 1330; *Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 298 Ga. App. 204, 206, 679 S.E.2d 785, 788 (2009).

### III.   DISCUSSION

Defendant argues it has presented sufficient evidence to show that the parties entered a valid agreement to arbitrate. Plaintiff disputes that a valid arbitration agreement ever existed between the parties and argues that Defendant has not proven that she received the MAA. After careful review of the evidence, the undersigned agrees with Defendant.

A district court may conclude as a matter of law that the parties entered an arbitration agreement and then compel arbitration only if, after reviewing the evidence under the relevant state substantive law, "there is no genuine dispute as to any material fact" regarding the formation of such an agreement. *Bazemore*, 827 F.3d at 1333 (quotation marks omitted). A contract is enforceable under Georgia law if there are: (1) parties able to contract; (2) consideration; (3) assent by the parties to the terms of the contract; and (4) a subject matter for the contract to operate upon. *Id.* at 1330.

Here, Plaintiff's arguments challenge the third requirement—whether the parties assented to the terms of the MAA. To that end, Plaintiff asserts that she never received the email containing the agreement. She argues alternatively that, if she did receive the email, she would have believed it to be spam and would not have clicked on any links within the email. Plaintiff's assertions do not create a genuine dispute of material fact.

To begin, while Plaintiff argues that Defendant could have required e-signatures, an arbitration agreement does not need to be signed. *See Caley*, 428 F.3d at 1368; *Howard v. Dollar Gen.*, No. 1:18-CV-4824-TCB-JFK, 2019 WL 13269680, at *4 (N.D. Ga. Mar. 22, 2019) ("Because arbitration agreements need only be in writing and need not be signed, the evidence before the court need not demonstrate that Plaintiff signed the Agreement, which is undeniably in writing."), *R. & R. adopted*, 2019 WL 13269750 (N.D. Ga. June 3, 2019). Defendant was not required to obtain signatures, and its failure to do so does not render the arbitration agreement invalid. And as for Plaintiff's argument that, instead of e-signatures, Defendant could have required its employees to click a button affirming that they read the arbitration agreement, that is not required either. Defendant was only required to provide Plaintiff reasonable notice of the arbitration agreement in writing, and as discussed below, it did.

7

Plaintiff argues that Defendant should have sent the agreement through the employee portal instead of through a third-party email program. But Defendant has presented evidence—which Plaintiff has not disputed—that several important communications were sent through email, Plaintiff was required to check and respond to emails as part of her job duties, and the agreement was also posted on the corporate intranet. *See Howard*, 2019 WL 13269680, at *4 (finding that there was a valid arbitration agreement when the defendant made repeated efforts to publish the agreement and advise employees of the opt out process). Nothing in the FAA required Defendant to post the MAA to an employee portal.

Plaintiff's assertion that she never received the email in question is not enough create a genuine issue of material fact. "When a defendant has produced evidence showing that it sent an item properly mailed . . . there arises a rebuttable presumption that it was received by the addressee. This presumption cannot be overcome merely by stating in an affidavit that the plaintiff never received the agreement." *Corbin v. Affiliated Comput. Servs., Inc.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, at *6 (M.D. Fla. July 19, 2013). Courts have applied that rebuttable presumption to notices sent via email. *Eyth v. Spectrum Charter Commc'ns, Inc.*, No. 8:23-CV-1878-CEH-TGW, 2024 WL 1833011, at *6 (M.D. Fla. Apr. 26, 2024) ("[A] plaintiff's unsupported affidavit stating he did not receive an email, in the face of

affirmative evidence that it was sent to him, is insufficient to rebut the presumption of receipt or to create a genuine issue of fact.").

Defendant has shown that it sent the email three separate times to Plaintiff, sent it to her assigned email address, and never received any undeliverable messages from Plaintiff's account. Her assertion alone that she did not receive the email does not rebut the presumption that she did. *See Howard* 2019 WL 13269680, at *5 (finding that a plaintiff could not rebut the presumption that she received the arbitration agreement in the mail because the defendant's records showed that it was not returned as undelivered); *Jordan v. Equifax Info. Servs., LLC*, No. 3:20-CV-199-TCB-RGV, 2021 WL 4988315, at *7 (N.D. Ga. July 21, 2021) (finding that the plaintiff's assertions that he never received the notice with the arbitration agreement were insufficient to rebut the presumption that he received the agreement), *R. & R. adopted*, 2021 WL 4988316 (N.D. Ga. Sept. 30, 2021); *Dixon v. Synchrony Fin.*, No. 1:15-CV-406-RWS-JFK, 2015 WL 12720290, at *5 (N.D. Ga. Aug. 18, 2015) (finding that a plaintiff's statement that she did not recall seeing an email containing an arbitration agreement was not sufficient to overcome the presumption that she received the email and its attachments), *R. & R. adopted*, 2015 WL 12723144 (N.D. Ga. Sept. 10, 2015).

Plaintiff's alternative argument that she would have marked the email as spam and never clicked the hyperlink within is even less convincing. First, "Plaintiff's

decision not to open and read an email does not render the arbitration agreement invalid and unenforceable." *See Grant v. Morgan Stanley Smith Barney LLC*, No. 16-81924-CIV, 2017 WL 1044484, at *3 (S.D. Fla. Mar. 20, 2017). Given the number of times Defendant sent Plaintiff this email, and that it was also available on the intranet, it is irrelevant whether she clicked on the hyperlink to open the MAA. *See Anderson v. Angie's List, Inc.*, No. 1:22-CV-4344-TWT, 2023 WL 2933263, at *3 (N.D. Ga. Apr. 13, 2023) (finding that, when a plaintiff was given reasonable notice of the terms of an arbitration agreement with the defendant, it was irrelevant whether she actually clicked on the link to the terms and conditions); *see also Grant*, 2017 WL 1044484, at *4 (rejecting argument that email with the words "arbitration program" in the subject line had the "innocuous appearance of a non-important human resources correspondence" and finding that the agreement's terms were communicated in a reasonable manner when the agreement was accessible via a link in an email and on the defendant's intranet page); *Kester v. BellSouth Telecomms., Inc.*, No. 3:18-CV-1469-J-32MCR, 2019 WL 13267100, at *12 (M.D. Fla. Aug. 2, 2019) (finding that two emails regarding an arbitration agreement constituted an offer to contract).

Accordingly, Defendant has presented sufficient evidence that it took reasonable steps to communicate the MAA and opt-out option—that is, the offer and

means of acceptance—to Plaintiff. The undersigned now must decide whether Plaintiff accepted that offer.

After Plaintiff had reasonable notice of the arbitration agreement, she continued to work for Defendant and did not opt out of the agreement. That is enough to show that she assented to the terms of the arbitration agreement. *See Howard*, 2019 WL 13269680, at *4 (finding that continuing to work for the defendant without opting out of the arbitration agreement constituted acceptance of the agreement); *Smith v. Sanders Realty Holdings, LLC*, No. 1:20-CV-03617-ELR-CMS, 2021 WL 2651816, at *4 (N.D. Ga. Jan. 15, 2021) ("Both federal and Georgia law make clear that an employee may manifest assent to an arbitration agreement by continuing in his or her employment, which is what Plaintiff did here."), *R. & R. adopted*, 2021 WL 2651817 (N.D. Ga. Apr. 19, 2021); *see also Grant*, 2017 WL 1044484, at *3 (finding that a plaintiff assented to the terms of the arbitration agreement when he continued to work for the defendant and failed to opt out).

Finally, while Plaintiff argues that enforcement of the MAA would be counter to public policy, this argument in her brief challenges the manner in which Defendant distributed the agreement, not any provision in the agreement itself. The undersigned has already explained that Defendant reasonably provided notice by sending the agreement via email three times and posting the agreement on the corporate intranet. That Plaintiff never clicked the link in the email "does not render

11

the arbitration agreement invalid and unenforceable." *See Grant*, 2017 WL 1044484, at *3. Accordingly, Defendant's motion to compel arbitration should be **GRANTED**.

## IV.   CONCLUSION

Based on the above, the undersigned **RECOMMENDS** that Defendant's motion to compel arbitration and stay this matter, (Doc. 12), be **GRANTED**. Specifically, the undersigned **RECOMMENDS** that the parties be **ORDERED** to arbitrate their dispute and that this case be **STAYED** and **ADMINISTRATIVELY CLOSED** pending the completion of such arbitration.[1]

IT IS SO **RECOMMENDED** on this 7th day of June 2024.

_R. Cannon_
REGINA D. CANNON
United States Magistrate Judge

---

[1] *See* 9 U.S.C. § 3 (stating that courts "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *Smith v. Spizzirri*, --- U.S. ----, 2024 WL 2193872, at *4 (U.S. May 16, 2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").